Robert Hare Powel et al., Plffs. in Err., *v.* William H. Whitaker.

Where a struck list has been filed, in accordance with a rule of court which is repealed the same day, and at the trial, four days afterwards, the court, in view of the recent repeal of the rule, permits the use of the struck list with the result that only nine jurors are obtained, it is not error for the court immediately to direct the calling of the jury without regard to the struck list.

*Query* whether the right to a struck jury is abolished by the act of June 22, 1885.

In an action for commissions on sales, where the defense was that the commissions were not due until the orders were paid for, and this was denied by the plaintiff, who testified that there was a special contract to pay commissions monthly or when called for, and, on cross examination, testified that it had never been his custom when selling by agents to require them to wait until bills were paid, the refusal of the court to allow a witness to contradict the plaintiff as to his custom is no cause for reversal.

(Argued January 7, 1887.  Decided January 24, 1887.)

January Term, 1886, No. 235, before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ.  Error to the Common Pleas No. 4 of Philadelphia County to review a judgment on a verdict for the plaintiff in an action of assumpsit. Affirmed.

This was an action by William H. Whitaker against Robert Hare Powel & Company, to recover a balance which he alleged to be due him upon a contract to pay him a commission for coal sold by him for the defendants in 1884.

At the trial before WILLSON, J., on October 7, 1885, the counsel for the defendants presented a jury list which had been struck and filed on October 3, 1885, at 9 A. M., according to the rule of court at that time in force.  Twelve names had been stricken out.  The rule so far as it touched this subject was as follows:

"Rule 24 (Rules of Court, p. 42) § 100.  The prothonotary shall cause a list of jurors in each cause set down for trial by jury to be printed; and when requested he shall deliver a copy to the attorney on each side at least eight days before the time of striking, and he shall subjoin thereto a notice of the time and

place of striking the same. The notice of the prothonotary shall be considered as entitling the plaintiff or defendant to strike the same, *ex parte,* at the time appointed without further notice; *Provided,* That the striking of a jury is not to be considered as entitling either party to trial if not otherwise entitled.

"Sec. 101. Each party shall be allowed to strike from the list of jurors twelve names, or any number less than twelve. The list must be struck at the time and place appointed by the prothonotary, and no jury shall be struck at the bar; but if the list be not struck according to this rule, the jury shall be taken from the panel as returned."

The list of jurors had been delivered to the attorney for the defendants on request, and the prothonotary had subjoined thereto his notice of the time and place of striking, which had been duly observed. When the jury was about to be called, the counsel for the defendants asked that, according to the practice, the struck list be used.

The court referred to the action of the judges on October 3, 1885, the very day on which the defendants' list had been struck, at an hour later that 9 A. M., whereby all of § 100 above quoted, after the words "each side," and all of § 101, also above quoted, had been repealed.

The court added that the right to such a list under the action of the judges did not exist; but that in view of the recent date of that action the list offered by the defendants might be used.

A jury was then called from the jurymen in attendance, exclusive of those whose names had been struck.

It was found that, called in this manner, only nine jurors were obtainable.

The counsel for the plaintiff then asked that the jury should be called without reference to the struck list, which the court, under objection from the defendants, ordered to be done. The jury was so called. An exception was allowed the defendants.

From the testimony the following facts appeared:

Warner & Merritt were a fruit firm. Mr. Whitaker was employed by them at a salary of $2,400 per year, and made their purchases of coal. He had been making purchases from the Philadelphia & Reading Coal & Iron Company, which allowed him a commission of fifteen cents per ton, but the defendants, to get the trade of Warner & Merritt, offered him a commission of twenty cents per ton. This was accepted, and a purchase

made of 5,000 or 6,000 tons of coal, at $3.10 per ton. The contract was reported to Warner & Merritt, including the arrangement about commissions and Mr. Whitaker agreed with them that the amount of the commissions received by him should be deducted from his salary. He produced at the trial the original memorandum presented to Warner & Merritt, showing that the coal would practically net them $2.90 and also the account upon which he settled with them, showing the payment by him to them of the commissions. He also produced checks showing the payment to him on account of commissions of $284.20 April 1, 1884, and $335.40 July 1, 1884. Warner & Merritt failed in August, before the contract was completed, owing Mr. Whitaker about $12,000, including about $1,500 for salary, and owing the defendants about $4,500 for coal. The defendants refused to pay the commission and this suit was brought.

The defendants testified that the commissions were not to be paid until the orders were paid for.

The plaintiff testified that the commissions were to be paid monthly or when called for, and upon cross-examination testified, *inter alia,* as follows:

"Contract was special contract. It was custom to allow commissions. It was not custom only to pay when bills were paid. Have sold coal on my own account. Been in that business. Have sold by agents. Have paid agents commissions. I don't remember any case in which I insisted on bills being paid before I pay commissions, or refused to pay agent because there had not been payment of bill. Nothing was ever said about commissions not being paid until bill paid. Never insisted on my agents waiting till bills paid, before they got their commissions."

The defendants offered to discredit the plaintiff by contradicting his statements that he had not insisted at any time upon his agents, who made sales for him, waiting till his bills were paid before they got their commission, nor upon any agents so doing; and by showing by this witness that he had sold coal for plaintiff, as agent, and plaintiff had always insisted on his waiting for his commissions till collections had been made on account of his sales. Overruled.

Verdict and judgment were for the plaintiff.

The assignments of error specified the action of the court in disallowing the struck jury list and in overruling the defendants' offer to discredit the plaintiff.

*William W. Wiltbank,* for plaintiffs in error.—The defendants were in the position of having validly challenged twelve men, and it must be presumed that their objections to those men were sufficient. The court had in effect recognized them. The men, then, were ineligible to serve.

The position was analogous to an exhausted panel and a draft upon the bystanders. Under a *tales de circumstantibus,* as once in use, no one of the jurors still attending who had been validly challenged could have been brought in. They themselves might have set up the exemption which the challenge had secured them; and if they did not do so, the party who had struck their names might have challenged the array. 3 Bl. Com. 363–5.

If this contention is erroneous, then under similar circumstances any one of the four men peremptorily challenged under the act of March 29, 1860, might be brought in. In a criminal case (and the reasons seem equally forcible in a civil case) a challenging party may not even himself withdraw a peremptory challenge. Com. v. Twitchell, 1 Brewst. (Pa.) 559, 601; Rex v. Parry, 7 Car. & P. 836; State v. Creasman, 32 N. C. (10 Ired. L.) 398.

Much less, it would appear, could it be disregarded against his consent.

It does not rest in the discretion of a judge to permit or refuse a struck list, independently of the law. We are then reduced to this proposition: that the court acted either erroneously or correctly in the premises. If it acted erroneously, the only party who was prejudiced did not except. In the absence of such exception, a palpably wrong judgment in sustaining a challenge cannot be set aside. Funk v. Ely, 45 Pa. 444.

No harm could have been worked by the continuance of the trial to the next day; or persons not on the jury list might have been summoned "immediately," under the act of 1858, § 7 (Purdon's Digest, 969, pl. 98).

The action of the board of judges of October 3, 1885, repealing the rule of court, was not of retrospective effect. If the rule was operative up to the time of that repeal, the struck list was binding, for it had been made while the rule was in force.

If the rule had then ceased to be operative, it was because of the act of June 23, 1885, alone.

If the rule depended on a statute, and the act of 1885 ex-

pressly or by implication abrogated the same, we must find what statute was thus set aside.

If the rule rested entirely in the power of the court, as a product of its authority at common-law, the act of 1885 did not reach it. By "the Duke of York's Laws" (1676) no provision was made for special juries. The constables of the several towns within the jurisdiction were, upon warrant from the sheriff or under sheriff, to warn so many of the overseers to attend as jurymen as were proportionable to the causes to be tried, with regard to the equality of the number from each town. No jury was to exceed the number of seven, nor be under six, unless, in special causes of life and death, the justices should see fit to appoint twelve. Only in the cases last mentioned was it necessary that the verdict should be unanimous.

By the laws for the province, passed and "agreed upon in England," in or shortly after 1682, a jury was to consist of twelve men; and "reasonable challenges shall be always admitted against the said twelve men or any of them." These men were to be "peers, or equals, and of the neighborhood, and men without just exception."

William Penn, upon his arrival in the Province in 1682, adopted the laws of the Duke of York, and they continued in force until replaced by the new Code, made at Chester.

The Great Law, passed at Chester, October 7, 1682, contained a provision similar to that last above quoted. Chapter 38.

Chapter 49, relating to the trials of criminals, shows the same allowance of exception: "And that all possible Care and tenderness may be shewn about the life of men, and to prevent Corruption—*By the authority aforesaid Be it Enacted* that in all Causes Capital, and Criminal, the Freemen of the County shall be summoned by the Sheriffs, and the names of the freemen shall be writ in small pieces of paper and put into a hat and shaken; forty-eight of whom shall be drawn by a Child, and those so drawn shall stand for the Sheriff's Returns; And the first twelve not reasonably excepted against shall Stand and Serve," etc.

In 1700 there was an enactment similar to that above quoted as of, or about, 1682.

The statutes referred to may be found in the volume of laws published by the state under the act of June 12, 1878. *Vide* that volume, pp. 33, 34, 67, 69, 100, 117, 129, 164, 199, 214.

The act of March 19, 1785, 2 Dall. 267, provided for a special jury in any civil action or cause depending in any court; and it authorized the party desiring one to enter a rule for such jury, to be struck by the prothonotary, "in such manner as special juries have heretofore been struck." Purdon's Digest, 967, note.

The act of March 27, 1789, 2 Dall. 691, required a defendant entering a rule for a special jury in the supreme court or *nisi prius*, except in cases where the title to real estate was in question, to make and file an affidavit of defense as to a part or the whole of the demand.

The special jurors contemplated by these acts were summoned in a manner independent of the mode for obtaining the common jurors. The latter was set out in the act of March 19, 1785. The practice in procuring special jurors was referred to in Hubley v. White, 2 Yeates, 133.

The act of March 29, 1805, 4 Smith's Laws, 241, superseded, for the county courts, that last mentioned, and provided for three wheels, to be numbered: No. 1, for the names of grand jurors; No. 2, for the names of petit jurors, and No. 3, in Philadelphia city and county, for special jurors. Sections 1, 2.

By § 11 it provided that when a rule has been entered by either of the parties in a civil action or cause depending in any court for striking a special jury, the parties shall strike the same in the prothonotary's office from the list of jurors which may be drawn from the proper wheel, etc.

The act of April 4, 1807, 4 Smith's Laws, 390, provided for certain action of assessors in the wards, and repealed a part of the act of 1805, but was itself repealed by the act of April 4, 1809, 5 Smith's Laws, 59, whereby the act of 1805 was made perpetual. This act of April 4, 1809, besides continuing the system of special juries, authorized a peremptory challenge of two jurors when called in all civil cases.

Before 1808 the attorneys practising in the supreme court had agreed, and their agreement had been made a rule of court, that as a requisite to a special jury there should be counsel's certificates that the application was not intended for delay. The court, however, disregarded this; as not required by the acts (1785, 1789, *supra*), and as in derogation of the party's right. Neff v. Neff, 1 Binn. 350.

In Schwenk v. Umsted, 6 Serg. & R. 351, it was shown that

a practice of allowing two peremptory challenges in a case of a special jury had grown up, and had so long prevailed that the supreme court must uphold it. This was in 1821. The rule was recognized in Schuylkill Nav. Co. v. Farr, 4 Watts & S. 362, in 1842.

The next act of assembly in chronological order is that of 1834, but mention will first be made of the act of March 30, 1811, 5 Sm. 223, which created the district court, and in § 8 provided for common and special jurors. Between 1811 and 1824 it became the practice in Philadelphia county to draw jurors from the special wheel only for the trial of civil causes. In the district court every cause at issue is placed "on the special jury trial list which is not directed by the parties to be tried by a common jury; so that there are now scarcely any trials by a jury of the latter kind in that court. . . . In the common pleas of this county it is the practice to summon a jury, drawn, however, from the special jury wheel, for the trial of all causes at issue in that court during each term." 1 Pa. Practice, 175, 176, A. D. 1825.

The ordinary jury, then, was a special jury, and the distinction between the wheel No. 2 and the wheel No. 3 was almost entirely lost. It was abrogated, finally, as will be seen, by the statute of April 29, 1858.

The act of April 14, 1834 (P. L. 356), provided for three wheels, as did the act of 1805, the third wheel being for special jurors. Section 82.

In civil suits two challenges were allowed (§ 150); and a provision for special juries was made by § 157. This section is given in full in Purdon, p. 967, pl. 80. The names were to be drawn from wheel No. 3.

Thus far the legislation as to peremptory challenges in no manner affected the legislation as to special juries. The subjects are independent of each other, and have been so treated in the acts and the decisions above cited.

Section 140 of the act of 1834 (P. L. 1833–34, p. 366), (set out in full in the act of June 23, 1885, P. L. 138), refers only to the method of getting a jury, whether common or special, into the box at time of trial.

It is part of an act which directs specifically in another section how, before trial, special juries are to be obtained, just as

it does in still another place how before trial common juries are to be obtained.

As that section did not affect in the least degree the concurrent legislation for special juries, so it is submitted that the amendment of it made by the act of 1885 has had no such effect. The act of 1885 is to be read as if it was § 140 of the act of 1834.

A brief examination of later legislation does not modify this view.

The act of April 29, 1858 (P. L. 354), provided for one wheel, and did away with the *tales de circumstantibus*.

It related merely to the method of obtaining jurors from the body of the county, and made no provision in derogation of acts touching other branches of the subject.

By the act of March 29, 1860 (P. L. 344), in civil suits four peremptory challenges were allowed. Purdon's Digest, 967, P. L. 76.

By the act of June 5, 1883 (P. L. 79), on challenge for cause, the truth of the cause shall be inquired of by the court. This was law already.

The last act is that of June 23, 1885 (P. L. 138), so often mentioned in this brief.

The practice of the courts under this legislation is shown by the rules of court.

Dist. Ct. Rules of first Monday of June, 1857; Rules 45, 46, Walker. Of first Monday of July, 1870; Rule 14, Davis & S. C. P. Rules, Walker's ed. of 1857. Rule 22. Lists must be struck according to provisions of "the act"—evidently the act of 1834. New rules of Sep. 27, 1870. Rule 23, Davis & S. S. C. at nisi prius Rules of Jan. 15, 1849. Rule 9, § 5. New revision of SHARSWOOD, J., and the Prothy. of 1870. Rule 14, Davis & S. Similar rules of the D. C. and C. P. of 1824, are quoted in Pa. Practice, 175.

Finally we have the edition of the rules now in use, and from this an extract has been made in the statement of the case.

These conclusions are warranted:

(1) That the rule of court under which the list in this cause was struck was not annulled by the act of 1885; (2) that the act of 1885 is to be read into the act of 1834, and is only so effective; (3) that prior to the act of 1858 special jurors were drawn from a special wheel, which wheel was that in common

use; (4) that the act of 1858 did not abolish special or struck juries, but only provided for one wheel for all classes of jurymen; (5) that special juries have been recognized from a time anterior to 1785 to this time, more than one hundred years, McDermott v. Hoffman, 70 Pa. 55; (6) that legislation as to peremptory challenges has been collateral to and independent of legislation as to special juries; (7) that the act of 1834 in its 157th section is still in force; and hereafter if parties desire a special jury, they will be entitled to it, upon proper entry of a rule in the prothonotary's office; (8) and that, therefore, although the rule of court has been repealed, that action of the judges did not deprive the defendants in this case of their right to use the struck list.

*Samuel W. Pennypacker,* for defendant in error.—The rule of court under which the defendants struck their jury having been repealed upon the same day on which the jury was struck, the court will presume that it was done at the first instant of the day.

The law recognizes no fraction of a day. Slingluff v. Ambler, 2 W. N. C. 67; Kane v. Com. 89 Pa. 522.

The law will never account by minutes and hours unless it be to prevent a great wrong, mischief, or inconvenience. Bellasis v. Hester, 1 Ld. Raym. 281; Hampton v. Erenzeller, 2 Browne (Pa.) 19.

There is no division of a day, except in case of necessity. 20 Vin. Abr. p. 269.

The repeal of the rule, even if it had been made the day before the trial, would have been in no sense *ex post facto,* since the object of the rule was to obtain a jury at the time of the trial. The requirement that the striking should be done eight days before, and in the office of the prothonotary, was not an enlargement of the right given by the rule but a qualification of the right. It was a limitation imposed upon it. When the right under the rule ceased by its repeal, the limitation fell with it. What had been done before had been done under the limitation imposed, and when the case was called for trial the whole thing had been swept away by the repeal. The repeal did not take away a right existing eight days before; it took away a right which otherwise would have existed at the trial, but which, in order to be exercised, required that certain action should be taken in advance.

The rule, however, had been repealed by the act of 1885, which provides a complete system by which juries are to be secured, and renders the provisions of the rule unnecessary and obsolete.

The act of 1885 is mandatory; it gives ample protection by peremptory challenges, and its purpose was to do away with the methods which had previously existed to accomplish that end. If in the course of time the special jury became the ordinary jury of the courts, and in view of this fact, the act of 1858 abolished one of the wheels, then the act of 1858 and the subsequent legislation had reference to special juries rather than the ordinary juries, and the striking must be such as is provided for in that legislation, the last being the act of 1885.

A committee of the judges of the courts of common pleas of Philadelphia thoroughly examined the subject, and reached the conclusion that the right to struck juries no longer existed; and this conclusion received the support of all the judges.

See report of Judges PEIRCE, MITCHELL, and ARNOLD, 42 Phila. Leg. Int. 414.

The act of 1834, § 157, provided as follows: "When a rule shall be entered in a civil action depending in any court for striking a special jury, the parties in any such action shall strike the same, in the office of the prothonotary or clerk of the respective court, from the list of jurors which shall have been drawn from the proper wheel as aforesaid for the ensuing court."

The act provided for a wheel, and the means by which these provisions could be carried into effect. They were, however, abrogated, so far as concerns Philadelphia, by the act of April 20, 1858 (P. L. p. 354). That act, the purpose of which was to establish a mode "of selecting and drawing jurors," abolishes the wheel and machinery provided for struck juries by the act of 1834, and makes no provision for or reference to them.

Conceding, however, for the sake of the argument, that the act of 1885 must be read into the act of 1834, and that the 157th section of that act still exists with reference to Philadelphia, the defendants below did not proceed under that act, or bring themselves within its terms, but acted entirely under the rule of court which at the time of the trial did not exist. Under the act of 1834, a rule must be taken. It contemplates notice to the oppo-

site party, since both were to be present. The defendants took no rule. They gave no notice and acted entirely *ex parte.*

The contradiction of Mr. Whitaker was in the sound discretion of the court. His attention should have been called to the facts. Wright v. Cumpsty, 41 Pa. 102; Walden v. Finch, 70 Pa. 463.

PER CURIAM:

Notwithstanding the able and zealous argument of the counsel for the plaintiff in error, we discover no error in this judgment. The requisite number of struck jurors not being obtained, and the rule of the court providing for the struck jury having been repealed, it was not error to order the jury to be called without reference to the struck list. The remaining assignment is without merit.

Judgment affirmed.